UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

COREY J. SEEFELDT,

      Plaintiff,

      v.                          Case No. 22-C-1546

MARTIN J. O'MALLEY,

      Defendant.

## DECISION AND ORDER REVERSING THE COMMISSIONER'S DECISION

Plaintiff Corey Seefeldt filed this action for judicial review of a decision of the Commissioner of Social Security concluding that Plaintiff's disability under 42 U.S.C. §§ 216(i) and 223(f) of the Social Security Act ended on December 18, 2017, and that he has not become disabled again since that date. Plaintiff asserts that the decision of the administrative law judge (ALJ) is flawed because the ALJ failed to ensure that the VE's methodology to reach her job number estimates was reliable and therefore requires reversal. For the reasons that follow, the Commissioner's decision will be reversed and remanded for further proceedings.

## BACKGROUND

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act in 2006, and he was found disabled beginning November 22, 2006. R. 236; 531–32. In March 2012, the Social Security Administration reviewed Plaintiff's claim and determined that his disability continued. R. 236. In December 2017, Plaintiff received notice that the agency determined his health had improved. As a result, he was no longer disabled and his disability

insurance benefits would cease that month. R. 316–17. After the agency denied Plaintiff's request for reconsideration, he requested a hearing before an ALJ. R. 321, 357–60.

An administrative hearing was held on December 19, 2019. R. 168–222. On February 5, 2020, the ALJ concluded in a 31-page decision that Plaintiff's disability ended on December 1, 2017, and Plaintiff had not become disabled since that date. R. 240–58. The Appeals Council reversed the ALJ's decision and remanded it for further consideration. R. 229–30. A second administrative hearing was held on December 22, 2020. R. 126–167. On February 10, 2021, the ALJ concluded in a 31-page decision that Plaintiff achieved medical improvement, Plaintiff did not have an impairment or combination of impairments that met a listing, he retained the ability to perform a significant number of jobs in the economy, his disability ended on December 18, 2017, and he had not become disabled again since that date. R. 277–92. The Appeals Council again reversed the ALJ's decision and remanded it for further consideration. R. 268–69.

ALJ William Shenkenberg held a telephonic administrative hearing on February 17, 2022. R. 61–125. Plaintiff, who was represented by counsel, a medical expert, and a vocational expert (VE) testified. At the time of the hearing, Plaintiff was 36 years old and lived in a house with his wife in Menasha, Wisconsin. R. 67. Plaintiff graduated from high school in 2004 and then served in the United States Marine Corps. R. 68–69. Plaintiff's service ended in February 2005 when he fell ten to fifteen feet and fractured his lower vertebrae. R. 69. After Plaintiff underwent surgery to fuse three vertebrae together, he began having panic and anxiety attacks. *Id.* He testified that he started having right leg neuropathy and mobility issues as well as dizzy spells, motion sickness, and the inability to eat. R. 69. Plaintiff stated that he tried working at Best Buy in loss prevention but stopped working a month or two later because he had dizzy spells that made him vomit. R. 70. He had not worked since 2007. *Id.*

Plaintiff testified that he received medical care from the VA Medical Centers in Appleton and Milwaukee, Wisconsin. *Id.* As to his current condition, Plaintiff stated that he has problems lifting his right hip and has pain where his spine is fused. R. 71. His back pain radiates from his right foot to the bottom of his shoulder blades. R. 72. Plaintiff indicated that he has problems turning his head due to his neck pain. *Id.* In 2017, Plaintiff had left shoulder surgery. R. 73. Plaintiff testified that he had difficulty with his range of motion and reaching. *Id.* He stated that, with respect to his migraines, he has had a constant headache since 2007. *Id.* Plaintiff indicated that he can sit for roughly 30 to 45 minutes and sits in a recliner with his feet up for two to three hours total in a day. R. 76–77. He stated that he could stand for 30 to 45 minutes and walk for 40 minutes at one time. R. 78. Plaintiff reported that he usually lays down for one hour after a walk. *Id.*

As to his mental conditions, Plaintiff testified that he takes mental health classes through the VA to help with his depression and anxiety. R. 79. He indicated that it is hard for him to go grocery shopping or do other simple tasks, like brush his teeth or take a shower consistently. *Id.* Plaintiff reported that he gets panic attacks. *Id.* He stated that he goes for a 20-minute drive when he feels anxious and also drives to the VA Medical Center. R. 80. When he returns from a drive to the Milwaukee VA Medical Center, he takes a two-to-three-hour nap. *Id.*

In a 29-page decision dated June 2, 2022, the ALJ concluded that Plaintiff's disability ended on December 18, 2017, and that Plaintiff has not become disabled again since that date. R. 19–47. The ALJ's decision followed the eight-step evaluation process for Plaintiff's Title II claim. The ALJ noted that the most recent favorable medical decision finding that Plaintiff was disabled is the March 19, 2012, determination, known as the "comparison point decision." R. 21. At the time of the comparison point decision, Plaintiff's migraines were a medically determinable

3

impairment and that impairment was found to medically equal section 11.03 of 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ determined that Plaintiff had not engaged in substantial gainful activity through the date of the decision. *Id.* He noted that, since December 18, 2017, Plaintiff has had the following severe medically determinable impairments: migraines, degenerative disc disease of the lumbar spine, history of L5 fracture, status-post lumbar fusion in 2005, status-post surgery left shoulder dislocation, degenerative disc disease of the cervical spine, degenerative disc disease of the thoracic spine, vestibular dysfunction, post-concussive syndrome, depression, and anxiety. *Id.* Next, the ALJ indicated that, since December 18, 2017, Plaintiff had not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 24. He determined that medical improvement occurred on December 18, 2017. R. 28.

The ALJ found that, based on the impairments present since December 18, 2017, Plaintiff has had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following limitations:

> [T]he claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl. The claimant can never reach overhead with the left non-dominant arm. The claimant must avoid concentrated exposure to irritants (such as fumes, odors, dusts and gases) and hazards (such as moving machinery and unprotected heights). The claimant is able to understand, remember, and carry out simple instructions and perform simple, routine tasks, in a position with only occasional changes and occasional decision-making. The claimant is able to maintain concentration, persistence and pace for simple tasks in two-hour increments. The claimant can have occasional interaction with the public, co-workers, and supervisors.

R. 30. The ALJ noted that Plaintiff has no past relevant work. R. 44. He concluded that, since December 18, 2017, considering Plaintiff's age, education, work experience, and RFC and based on the impairments present since December 18, 2017, Plaintiff has been able to perform a

significant number of jobs in the national economy, including document preparer, final assembler, and table worker.  R. 45.  The ALJ determined that Plaintiff's disability ended on December 18, 2017, and Plaintiff has not become disabled again since that date.  R. 46.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

## LEGAL STANDARD

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence."  *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)).  Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn.  *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)).  The ALJ "must build an accurate and logical bridge from the evidence to his conclusion[s]."  *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citing *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)).

The ALJ is also expected to follow the Social Security Administration's rulings and regulations.  Failure to do so, unless the error is harmless, requires reversal.  *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006).  In reviewing the entire record, the court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility."  *Estok v. Apfel*, 152

5

F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

Plaintiff argues that the ALJ failed to elicit a reasoned explanation of how the VE arrived at her job number estimates before relying on the VE's testimony to support the step eight denial. At step eight of the sequential evaluation process, the Commissioner has the burden of establishing the existence of a significant number of jobs in the national economy that a plaintiff can perform. *See* 20 C.F.R. § 404.1594(f)(8). The Seventh Circuit has held that, in assessing a VE's testimony concerning the number of jobs a claimant can perform, "the substantial evidence standard requires the ALJ to ensure that the approximation is the product of a reliable method." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018) (citation omitted). "A methodology is reliable when it is based on 'well-accepted' sources and the vocational expert explains her methodology 'cogently and thoroughly.'" *Ruenger v. Kijakazi*, 23 F.4th 760, 763 (7th Cir. 2022) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019)).

At the administrative hearing, the VE testified that there were jobs in the national economy that someone with Plaintiff's age, education, work experience, and RFC could perform and listed three categories of jobs: document preparer (58,000 jobs nationally), final assembler (23,000 jobs nationally), and table worker (10,000 jobs nationally). R. 113–14. After Plaintiff's attorney questioned the VE about the sources she relied on and the methodology she used to reach her job-number estimates, he objected to the VE's testimony: "The testimony is inconsistent with the Dictionary of Occupational Titles, at least one job is substantially different. She is unable to testify

6

as to the methodology that a reasonable person could understand. She puts too much reliance on SkillTRAN and, furthermore, she cannot extrapolate her experience locally in the nation as a whole. So those things that are inconsistent with the DOT do not lie on a supported opinion." R. 123–24. The ALJ asked counsel if he wanted to submit a post-hearing brief regarding his objections. R. 124. Counsel declined, stating that his objection at the hearing was adequately detailed. *Id.* In his written decision, the ALJ overruled Plaintiff's objection to the VE's testimony. R. 46.

Plaintiff asserts that the VE did not provide any reason to conclude that the sources and methodology she relied upon in reaching her job estimates were reliable. When asked about her methodology, the VE testified that she used a "variety of resources," but relied most heavily on U.S. Publishing's *Occupational Employment Quarterly* (OEQ). R. 119. She also relied on the Bureau of Labor Statistics' *Occupational Resource Survey*, Job Browser Pro, and SkillTRAN. R. 119, 122. The VE explained that she takes the job numbers provided by OEQ and reduces them by the percentage of part-time jobs for that position. R. 120. She determines the percentage of part-time jobs using census information provided by Job Browser Pro. *Id.* In other words, the VE adjusted the OEQ's job figures using Job Browser Pro information to determine the number of full-time jobs for a certain position. She then further reduced the number of full-time positions by eliminating jobs performed at the sedentary and medium levels by referring to information contained in the SkillTRAN program. R. 122.

Plaintiff argues that the VE did not explain how her reliance on the OEQ and its "equal distribution method" was reasonable. A VE may use a variety of sources to estimate jobs. One such source is the *Dictionary of Occupational Titles* (DOT), which "lists job titles and their requirements" but "does not estimate how many positions exist in the national economy for each

7

job title." *Ruenger*, 23 F.4th at 761–62. Because the DOT does not estimate job numbers, VEs typically rely on the Department of Labor's *Occupational Employment Survey*'s listed job-number estimates. *Id.* 762. The job-number estimates are not organized by DOT job titles but by the "standard occupational classification" (SOC) system. *Id.* The SOC sorts jobs into "broad occupational categories" that encompass multiple DOT titles. *Id.* To determine the number of individual DOT job titles within an SOC grouping, VEs sometimes rely on the OEQ. The OEQ "estimates the number of jobs available in the national economy for each DOT job title" through the equal distribution method. *Id.* The equal distribution method is a calculation that "divides the number of jobs estimated for an SOC code by the number of DOT titles contained within that SOC code." *Id.* The Seventh Circuit has "repeatedly questioned the accuracy of the equal distribution method because it illogically assumes that each DOT job title within an SOC code exists in equal numbers in the national economy." *Id.* (citing *Chavez*, 895 F.3d at 966).

Plaintiff asserts that the VE failed to justify the use of the equal distribution method. Although the Seventh Circuit has not "enjoined the use of the equal distribution method," it has required that a VE "justify her use of it." *Id.* at 764. In this respect, the Seventh Circuit's view of the law would seem to differ substantially from at least that of the Ninth Circuit. The Ninth Circuit has "long held that in the absence of any contrary evidence, a vocational expert's testimony is one type of job information that is regarded as inherently reliable; thus, there is no need for an ALJ to assess its reliability." *Ford v. Saul*, 950 F.3d 1141, 1160 (cleaned up). "Given its inherent reliability," the Ninth Circuit explains, "a qualified vocational expert's testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding." *Id.* (citations omitted). The Ninth Circuit's view is consistent with the Supreme Court's decision in *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019), which

held that an ALJ may rely on a VE's job-number estimates even when the VE withholds the underlying data on which her estimates are based. *Id.* at 1157 ("Where Biestek goes wrong . . . is in pressing for a categorical rule, applying to every case in which a vocational expert refuses a request for underlying data. Sometimes an expert's withholding of such data, when combined with other aspects of the record, will prevent her testimony from qualifying as substantial evidence. That would be so, for example, if the expert has no good reason to keep the data private and her testimony lacks other markers of reliability. But sometimes the reservation of data will have no such effect. Even though the applicant might wish for the data, the expert's testimony will clear (even handily so) the more-than-a-mere-scintilla threshold."). But, of course, the Seventh Circuit's view of the law is controlling here.

In this case, the VE did not justify her choice of determining job-number estimates by "drawing on her past experiences with the method," *id.*, or explain how this method is "well-accepted," *Brace v. Saul*, 970 F.3d 818, 822 (7th Cir. 2020). In addition, the VE did not explicitly tie her education and professional experience to her use of the equal distribution method to estimate job numbers. *See Rennaker v. Saul*, 820 F. App'x 474, 479 (7th Cir. 2020) ("Although the VE pointed to his own education, research, training, and experience in job placement and vocational rehabilitation to explain the *kind* of work Rennaker could perform, the VE did not explicitly tie this background to his estimate of nationwide job numbers."). The only time the VE mentioned her education and experience was during her discussion of the mental requirements of the document preparer job as it is now performed. *See* R. 117. On this record, the court concludes that the VE's testimony lacks the support of substantial evidence. Accordingly, the ALJ's decision must be reversed and remanded to allow the VE "to expand on her testimony or make some other showing that significant jobs exist." *Ruenger*, 23 F.4th at 764.

**CONCLUSION**

For these reasons, the decision of the Commissioner is **REVERSED** and **REMANDED** to the Agency pursuant to 42 U.S.C. § 405(g) (sentence four).  The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 7th day of February, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
